# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

United States of America,

                Plaintiff,        Case No. 19-20202

v.                                Judith E. Levy
                                United States District Judge

Marvin Brown, Jr.          R. Steven Whalen
                                Magistrate Judge

                Defendant.

_____/

## AMENDED ORDER[1] DENYING DEFENDANT MARVIN BROWN, JR.'S MOTION FOR COMPASSIONATE RELEASE [25]

On July 22, 2019, Defendant Marvin Brown, Jr. pled guilty to possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841, and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 17, PageID.36-37.) Defendant was sentenced to 48 months' imprisonment. (ECF No. 23, PageID.84.) His projected release date is September 7, 2022. (ECF No. 28, PageID.116.)

---

[1] Amended to clarify the Court's analysis of Defendant's asthma as a COVID-19 risk factor in light of the Centers for Disease Control's current recommendations and medical evidence from the National Asthma Education and Prevention Program Expert Panel Report's Guidelines for the Diagnosis and Management of Asthma.

On April 15, 2020, Defendant moved for compassionate release and/or reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing that the danger posed to him by the COVID-19 pandemic constitutes an "extraordinary and compelling reason" for release. (ECF No. 25.) For the following reasons, Defendant's motion is DENIED.[2]

As an initial matter, the Court acknowledges that Defendant, as an incarcerated individual, faces an increased risk of contracting COVID-19 due to his confinement at FCI Milan in Milan, Michigan. On March 23, 2020, the Centers for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present[] unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *Interim Guidance on*

---

[2] There is another concern with this petition. Before defendants may bring a compassionate release motion to the courts, 18 U.S.C. § 3582(c)(1)(A) requires that defendants either a) apply for release through the Bureau of Prisons and fully exhaust all administrative remedies; or b) wait 30 days after notifying the Warden that they intend to apply for compassionate release. *Id.* It is undisputed that Defendant has neither exhausted his administrative remedies nor waited 30 days from the date of his email request for compassionate release. (*See* ECF No. 33.)

Defendant asks the Court to waive his failure to comply with these statutory requirements. (ECF No. 25.) Though the Court has the authority to waive these statutory requirements "to provide vulnerable inmates with speedy access to judicial relief in times of emergency," *see United States v. Agomuoh*, No. 16-20196, 2020 WL 2526113, at *5 (E.D. Mich. May 18, 2020), the Court need not address waiver in Defendant's specific case because it would deny relief on the merits.

2

*Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. The Court additionally acknowledges that FCI Milan itself has confirmed cases of COVID-19 for both detainees and staff. *COVID-19 Cases*, Federal Bureau of Prisons, (May 21, 2020) https://www.bop.gov/coronavirus/. Indeed, since the initial confirmed outbreaks in early 2020, Attorney General Barr has directed federal prisons to systematically evaluate and release inmates most at risk from the COVID-19 pandemic. Memorandum for Director of Bureau of Prisons, Att'y Gen. William Barr, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020).

However, Defendant is not one of those most at risk. The compassionate release statute allows the Court to modify a defendant's term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Guidelines define "extraordinary and compelling reasons" as "suffering from a serious physical or medical condition . . . that

3

substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 n.1(A).

Defendant, who is 36 years old, argues that he "has suffered from severe asthma and bronchitis since birth." (ECF No. 25, PageID.96.) Defendant argues that he is not receiving medical care for his condition, other than being placed in solitary confinement after prison officials suspected that he may have contracted COVID-19. (*Id.* at PageID.97.) Defendant argues that his asthma and inability to properly care for it at FCI Milan constitute "extraordinary and compelling reason[s]" requiring compassionate release. (*Id.*)

The Court disagrees. The CDC has indeed warned that individuals with "moderate to severe asthma" are at "higher risk of getting very sick from COVID-19." *Coronavirus Disease 2019 (COVID-19)*, Centers for Disease Control and Prevention, (Apr. 2, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. However, for the reasons below, the available medical evidence does not demonstrate that Defendant's asthma is moderate or severe, and he therefore is not at an increased risk of a dire

4

outcome from COVID-19 sufficient to establish extraordinary and compelling reasons for release.

As the undersigned has acknowledged in a previous opinion, the Court has no medical training and therefore "cannot apply traditional modes of statutory interpretation to discern the medical meaning of 'moderate to severe [asthma].'" *Malam et al v. Adducci et al*, Case No. 20-10829, ECF No. 90, PageID.2719 (E.D. Mich. May 23, 2020) (Levy, J.). Though the parties in this case did not provide the Court with a guideline for interpreting the meaning of "moderate to severe" as it relates to diagnosing asthma, the Court has since received such information in *Malam v. Adducci*, another recent coronavirus-related case. *Id.* Scientific understanding of the coronavirus, and of the way in which it impacts various medical conditions, is evolving almost daily and evokes heated debate within the medical community.[3] As a corollary, when the Court receives a motion asking it to make emergency medical decisions about whether a detainee's health predisposes him to death from this novel

---

[3] *See, e.g.*, Danny Hakim, *Asthma is Absent Among Top COVID-19 Risk Factors, Early Data Shows*, New York Times, (Apr. 16, 2020) https://www.nytimes.com/2020/04/16/health/coronavirus-asthma-risk.html (arguing that, despite initial CDC warnings about asthma as an aggravating factor for COVID-19, "[h]ealth experts have generally seen little to no evidence that asthma increases the risk of developing COVID-19") [hereinafter "NYT ASTHMA"].

5

pandemic, the Court must rely upon the medical community's evolving and current consensus. In these numerous and highly fact-dependent inquiries, the Court must continuously update its understanding of the science, even if doing so leads to evolving judicial outcomes as to certain medical conditions as the expert scientific community learns more from week to week.

Accordingly, the Court amends this opinion to provide further context for its discussion of Defendant's asthma in accordance with the clearest medical guidance available to it at this time. The outcome has not changed: Defendant's motion is denied. However, the Court wishes to clarify its reasoning in light of the current scientific evidence about asthma. In its original opinion, the Court denied Defendant's motion in light of recent statistical debate about whether asthma is a reliable predictor of a dire outcome from COVID-19. *See supra* n.3; *see also Fatalities*, New York State Dep't of Health, (May 6, 2020) https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n. Concluding based on current data models that asthma alone is not a reliable

6

predictor of a dire COVID-19 outcome, the Court held that Defendant's mild asthma, coupled with his young age and lack of additional risk factors, was insufficient to demonstrate compelling need for release in light of current scientific evidence.

However, one of the major voices in this evidentiary debate is the CDC, which as of May 14, 2020 is still warning that individuals with "moderate to severe" asthma are at an increased risk of a deadly outcome from contracting COVID-19. *People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, (last reviewed May 14, 2020) https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. The CDC has published, and regularly reviews, a list of factors and underlying health conditions that place people at heightened risk of severe illness and/or death from COVID-19. *Id.* Indeed, the CDC published warnings about moderate to severe asthma even after the contrary evidence emerged in April. *See id.* The Court must therefore assume that the CDC is aware of this contrary evidence, and that it has nevertheless concluded that moderate to severe asthma still presents a significant risk. "As the Supreme Court and Sixth Circuit have recognized, CDC public health and medical determinations

7

are to be given significant weight." *Malam*, No. 20-10829, ECF No. 90, PageID.2719 (quoting *Bragdon v. Abbott*, 524 U.S. 624, 650 (1998) ("[T]he views of public health authorities, such as the . . . CDC . . . are of special weight and authority.")).

Accordingly, the Court acknowledges new debate about the lack of asthma comorbidities in many coronavirus fatalities, but so long as the CDC continues to advise that moderate to severe asthma increases deadly risk, the Court will treat the CDC's recommendation as the best authoritative reflection of the scientific community's current consensus.

Consequently, the question now becomes whether Defendant's asthma can be considered "moderate" or "severe." As briefed by the parties in *Malam v. Adducci*, and according to the National Asthma Education and Prevention Program Expert Panel Report's Guidelines for the Diagnosis and Management of Asthma,

> Moderate asthma is characterized as daily symptoms, weekly nighttime awakenings, daily use of preventative medication, some limitation with respect to normal activity, and a Forced Expiratory Volume in One Second (FEV) measurement of between sixty and eighty percent of the predicted value. Severe asthma is characterized as symptoms throughout the day, as many as seven nighttime awakenings per week, use of preventative medication several times per day, extreme limitation with respect to normal activity, and an FEV measurement of less than sixty percent of the predicted value.

*Malam*, No. 20-10829, ECF No. 90, PageID.2719-2720.

Though Defendant asserted that his asthma is severe, he provided no description of his symptoms, let alone a description that could lead the Court to conclude that Defendant's asthma is either "moderate" or "severe." Conversely, the United States provided medical evidence indicating that Defendant's asthma does not reach the threshold of "moderate," let alone "severe." The United States provided the Court with two years of Defendant's BOP medical records, and Defendant did not dispute their validity. According to these records, a physician noted in November 2019 that Defendant suffers from "mild intermittent asthma," for which he uses an albuterol inhaler "yearly." (ECF No. 29, PageID.156.) In response to these records, Defendant simply reiterated in his reply that his "asthma and bronchitis make him vulnerable to COVID-19." (ECF No. 31, PageID.252.)

The Court understands from Defendant's medical records that he was hospitalized in April 2019 due to "severe bronchitis and asthma exacerbation." (*Id.*) However, occasional asthma attacks do not appear to be inconsistent with a medical diagnosis of "mild intermittent asthma." Additionally, Defendant did not dispute the medical report noting that

9

he uses his inhaler only "yearly," did not argue that he experiences anything resembling weekly or daily asthma symptoms, and in fact asserted that he is able to work 5 days per week in the FCI Milan kitchen. (ECF No. 25, PageID.96.) All of this evidence is inconsistent with a "moderate asthma" diagnosis, which would require evidence that Defendant experiences daily symptoms, weekly nighttime awakenings, daily use of medication, or limitation with respect to normal activity. *Malam*, No. 20-10829, ECF No. 90, PageID.2719-2720 (citing the National Asthma Education and Prevention Program Expert Panel Report's Guidelines for the Diagnosis and Management of Asthma). For these reasons, the Court cannot conclude that Defendant's asthma is moderate to severe, as flagged by the CDC and as defined by the National Asthma Education and Prevention Program.[4]

Without satisfactory evidence that Defendant's asthma is moderate to severe, and without additional risk factors, the Court cannot conclude that Defendant's conditions of confinement currently expose him to a risk

---

[4] This is not to say that contracting COVID-19 would not aggravate Defendant's *asthma*—it most certainly would. NYT ASTHMA ("Since common coronaviruses in the United States, trigger asthma flares in well controlled patients, we might expect COVID-19 to be similar.") However, despite Defendant's argument to the contrary, his medical records indicate that he is being monitored for this condition. (*See* ECF No. 30, PageID.208.)

of a dire outcome from COVID-19. Accordingly, Defendant cannot demonstrate that he is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 n.1(A).

The Court is deeply concerned about the wellbeing of Defendant, as well as that of all detainees, during this difficult time. However, the Court nevertheless concludes that Defendant's mild asthma, young age, and otherwise thankfully good health do not demonstrate "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A).

Accordingly, Defendant's motion is DENIED.

IT IS SO ORDERED.

Dated: May 29, 2020           s/Judith E. Levy
Ann Arbor, Michigan         JUDITH E. LEVY
                                     United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 29, 2020.

                                           s/William Barkholz
                                           WILLIAM BARKHOLZ
                                           Case Manager